# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARGARET BOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:23-cv-00142-AGF |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Margaret Boyd was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons stated below, the decision will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 17), as supplemented by Defendant (ECF No. 21-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on February 1, 1969, protectively filed her application for benefits on August 22, 2020. In her application, she alleged disability beginning on

---

[1] Martin J. O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for Acting Commissioner Kilolo Kijakazi as the Defendant in this suit.

March 11, 2020, due to depression, bipolar disorder, diabetes mellitus type-2, gout and diabetic neuropathy in her feet, vertigo, high blood pressure, congestive heart failure, kidney failure, spinal stenosis, arthritis in the hands and feet, and retinol diabetes of the eye.  Tr. 214.  Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

An online video hearing was held on March 8, 2022.  Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing.[2]  By decision dated March 30, 2022, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus type 2, diabetic neuropathy, congestive heart failure (CHF), obesity, chronic kidney disease (CKD), and adhesive capsulitis of the left shoulder.  Tr. 20.  However, the ALJ found that none of Plaintiff's impairments or combinations of impairments, including all of Plaintiff's medically and mentally determinable, non-severe impairments, met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by the Commissioner's regulations, except:

> She can never climb ladders, ropes, or scaffolds, and only occasionally climb ramps and stairs.  She can occasionally balance, stoop, kneel, crouch and crawl, but she must avoid all exposures to hazards such as moving machinery and unprotected heights.  The claimant can frequently reach using her left, non-dominant upper extremity, but must use a cane held in her right,

---

[2]     The hearing was held via online video due to the circumstances presented by the COVID-19 pandemic.  The claimant consented to and participated via online video, the VE participated via telephone.  Tr. 17.

>dominant hand for any ambulation that is necessary, with the free hand available for any lifting and carrying that is necessary.

Tr. 24.

Next, the ALJ found that Plaintiff had past relevant work as a Cashier, Tube Room (Dictionary of Occupational Titles ("DOT") 211.482-010, SVP 3 sedentary per the DOT, but medium as performed). The VE testified that Plaintiff's RFC would allow performance of the Cashier, Tube Room job per the DOT, but not as actually performed. Tr. 31. Based on the testimony of the VE and Plaintiff, in conjunction with the exhibits describing her past work, the ALJ found that Plaintiff's RFC would allow performance of her past work as a Cashier, Tube Room as generally performed in the national economy. *Id.* Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on December 27, 2022. Tr. 1. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that: (1) the ALJ failed to properly evaluate the RFC and (2) the ALJ failed to properly classify Plaintiff's past relevant work. Plaintiff asks that the ALJ's decision be reversed and remanded for further evaluation.

**DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted)

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not

4

less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

     A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning, also known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  To satisfy the "paragraph B" criteria, the claimant's mental impairments must result in one "extreme" or two "marked" limitation in functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  20 C.F.R. § 404, Subpt. P, App. 1, 12.00(F)(2).

     If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four

5

whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**(1) Evaluation of Residual Functioning Capacity (RFC)**

A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). Plaintiff contends that the ALJ's finding that Plaintiff can perform light work, while using a cane, is not supported by substantial evidence. Plaintiff first contends that a light work RFC is improper because an individual, like Plaintiff, who requires a cane to ambulate cannot stand and/or walk at least six (6) hours every day, five (5) days per week, as required by light work. Plaintiff also contends that the ALJ failed to properly consider that Plaintiff requires the cane for balance secondary to her peripheral neuropathy in the bilateral lower extremities, as opposed to requiring the cane for ambulation secondary to her occasional mild lower extremity edema.

As an initial matter, use of a cane alone does not preclude an RFC of light work. *Lea v. Kijakazi*, No. 21-03094-CV-S-WBG, 2022 WL 3684596, at *2 (W.D. Mo. Aug.

25, 2022) ("The need to use a hand-held assistive device does not itself preclude a claimant's ability to perform light work.") (internal quotations and citations omitted); *John B.H. v. Saul*, No. 4:20-CV-04080-VLD, 2021 WL 1192930, at *31 (D.S.D. Mar. 30, 2021) (same); *see also Dreams v. Colvin*, No. 15-2024, 2016 WL 3094017, at *6-7 (W.D. Ark. June 1, 2016) (finding that the ALJ's determination of an RFC of full-range light work was proper despite some medical records mentioning cane usage); *see Danielle H. v. Saul*, No. 5:18-cv-01438-GJS, 2019 WL 4139694, at *3 (C.D. Cal. Aug. 30, 2019) ("[T]he Court rejects Plaintiff's argument that there is an apparent conflict between the use of a cane and light work . . . . [T]here is ample authority in the Ninth Circuit affirming ALJ decisions that allow for the use of a cane and find the plaintiff capable of light work.").

In any event, the ALJ did not find that Plaintiff was capable of the full range of light work; he included several limitations, and specifically included the limitation for Plaintiff's use of the cane in her right hand. Tr. 24. Courts have routinely upheld light work RFC findings where the cane usage was accounted for in the limitations. *See Gieseke v. Colvin*, 770 F.3d 1186, 1188-90 (8th Cir. 2014); *Cleveland v. Saul*, 424 F. Supp. 3d 547, 551-52 (E.D. Ark. 2019); *Springfield v. Comm'r, Soc. Sec. Admin*, No. 4:20-cv-04021, 2021 WL 2117057, at *3 (W.D. Ark. May 25, 2021); *Campbell v. Saul*, No. 2:18-cv-00320-WGC, 2020 WL 972750, at *5-6 (D. Nev. Feb. 28, 2020) (finding that the ALJ did not err in adopting an RFC of light work with a limitation for cane usage and did not err in finding the plaintiff was able to do the light work cashier job identified

7

by the VE); *John B. H.*, 2021 WL 1192930, at *27-31.  Thus, the ALJ's finding of an RFC of light work is not an err just because Plaintiff requires the use of a cane for ambulation, especially given that the ALJ included a specific limitation in the RFC for Plaintiff's cane usage and asked the VE to consider this limitation in her assessment. *See* Tr. 24, 79.

Next, Plaintiff contends that the ALJ erred in failing to consider that Plaintiff also required the cane for balance purposes secondary to her neuropathy, not just for ambulation.  A review of the record readily dispels this contention.  "An ALJ must consider limitations resulting from a claimant's use of a cane only if the cane is 'medically necessary' or 'medically required.'"  *Lea*, 2022 WL 3684596, at *2 (citation omitted); *see also Shunkwiler v. Saul*, No. 1:20-CV-00145-JAR, 2021 WL 1516417, at *5 (E.D. Mo. Apr. 16, 2021) ("The full range of light work may be precluded when a constant use of a cane is 'medically required.'") (citation omitted).  The social security regulations provide that "to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." S.S.R. 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Here, there is little medical documentation regarding Plaintiff's cane usage.  On February 1, 2020, Plaintiff went to the emergency room at SSM Health DePaul Hospital – St. Louis with complaints of foot pain.  Tr. 741.  Specifically, Plaintiff complained

8

that she had broken both big toes in August 2019 and her left foot was still very painful. *Id.* The record notes she has a "normal gait w/ a cane," but does not otherwise prescribe or direct Plaintiff to continue using the cane or describe the circumstances for which it is needed.   Tr. 744.   On February 12, 2020, at an orthopedic follow up for her foot pain, there is no mention of cane usage, rather the physician notes that Plaintiff is no longer wearing a walking boot and prescribes physical therapy and orthotics.   Tr. 865-66. Following this visit, there are a series of physical therapy records from February 19, 2020 to March 13, 2020 for Plaintiff's foot pain/injuries that note Plaintiff "ambulates" with a "single point cane."   Tr. 340-51.   However, beginning on March 24, 2020, Plaintiff's medical records specifically note that she is ambulating without a cane.   Tr. 358-69, 373. On June 22, 2020, Plaintiff's physical therapy record notes that she is able to walk for 45-60 minutes before the onset of pain, able to stand for 45-60 minutes before the onset of pain, and able to ambulate 4 flights of stairs before needing to rest.   There is no mention of cane usage and Plaintiff reported that "she moved a lot of furniture and boxes over the weekend without a large increase in pain."   Tr. 413-14.   The only other mention of cane usage in Plaintiff's medical records are contained in sections labeled as "subjective" on August 3, 2020 and December 2, 2020, which both state "Continue LT foot pain due to broken great toes. Using cane for ambulation."   Tr. 1257, 1270.   There is no directive to continue cane usage or other information support it was medically necessary.

Regardless, any mentions of Plaintiff's cane usage in her medical records state that it was used for ambulatory purposes.   There is little to no medical documentation to

9

support that Plaintiff required a cane for balance purposes secondary to her neuropathy. Plaintiff argues that the ALJ's failure to properly evaluate and consider Plaintiff's use of cane for balance is a legal error.   Plaintiff argues that her testimony, that she required a cane for balance, is supported by the objective monofilament tests and clinical findings related to her neuropathy.   While Plaintiff's medical records do note abnormal monofilament exams and a diagnosis of neuropathy, none of these records note that Plaintiff was using or required a cane for balance.  *See e.g.*, Tr. 499, 514, 647. 1220   In fact, many of these records specifically note that Plaintiff was "able to walk," had "normal activities of daily living," and had "no difficulty with mobility."  *See e.g.*, Tr. 439, 456, 462, 484, 495, 538, 547.   There is one mention, again in the subjective portion of the medical record where Plaintiff is reporting her symptoms, that notes Plaintiff was previously "recommended to use a walker" after her vertigo issue, "to help balance her", "which she does sometimes."   Tr. 883.   However, there is no record of this initial recommendation in Plaintiff's medical records.[3]

In sum, even though Plaintiff alleged that she required a cane for balance purposes

---

[3]     Also, Plaintiff asserts that she required cane usage for balance secondary to her peripheral neuropathy in the bilateral lower extremities.   She does not allege that the ALJ erred in failing to consider her walker usage for balance secondary to her vertigo. The ALJ did discuss Plaintiff's alleged walker usage in his decision and question Plaintiff about it during her examination.  *See* Tr. 25, 70.   However, given there is just this one notation in the subjective portion of a medical record, the ALJ did not err in failing to include this limitation in her RFC because Plaintiff's use of a walker for balance secondary to her vertigo is not supported by sufficient medical documentation to render it "medically required" pursuant to S.S.R. 96-9p.

10

secondary to her neuropathy, there is no objective medical evidence to support this contention. *See Shunkwiler*, 2021 WL 1516417, at *5 ("[T]he Eighth Circuit has repeatedly affirmed ALJ's determinations that a claimant could perform light work where the use of a cane was self-prescribed.") (citing *Hill v. Astrue*, No. 4:11-CV-0874 SNLJ TCM, 2012 WL 3705138, at *11 (E.D. Mo. Aug. 2, 2012) (collecting cases)). When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole. 20 C.F.R. § 404.1529(c); SSR 16-3p. Although this Court must review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations, [it] does not require an ALJ to mechanically list and reject every possible limitation." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018) (internal citation omitted). Here, as noted, there is no medical documentation to support that Plaintiff's cane usage was medically required for balance purposes, thus the ALJ did not err in failing to include such limitation in the RFC.

After consideration of all the above-noted evidence, including Plaintiff's subjective complaints, the ALJ concluded that Plaintiff retained the capacity to perform light work as defined in the applicable regulations, with significant modifications tailored to Plaintiff's credible limitations, including limiting Plaintiff to never climbing ladders, ropes, or scaffolds, and only occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching and crawling; avoiding all exposures to hazards such a moving machinery and unprotected heights; frequently reaching using her left,

11

non-dominant upper extremity; using a cane held in her right hand for any ambulation that is necessary with the free hand available for any lifting and carrying that is necessary.  Tr. 24.  The ALJ's formulation was supported by substantial evidence and well within his zone of choice.  *See Bradley*, 528 F.3d at 115.

Plaintiff next contends that the VE testified that Plaintiff is limited to sedentary work as a result of using a came to ambulate.  This is a broad characterization of the VE's testimony.  When asked by the ALJ whether Plaintiff could perform her past relevant work as Assistant Manager, Retail, which is light work per the DOT, the VE testified that she could not, given her cane usage:

> ALJ:  Okay, what about the Assistant Manager, Retail job? Could that job be done utilizing the cane?
>
> VE:  No, I don't believe it could, because it would -- with light work the cane would have to be used with one hand while standing, and so that would pretty much eliminate the light work.

Tr. 79.

Admittedly, it is not entirely clear whether the VE was testifying that Plaintiff would be precluded from *all* light work given her cane usage, or whether she would be precluded from this specific past relevant work as an Assistant Manager, Retail.  While VE testimony must be considered and properly weighed by the ALJ, it is not binding on the ALJ.  *See Carter v. Berryhill*, No. 4:17-CV-00847-NNC, 2018 WL 1455859, at *3 (E.D. Mo. Mar. 23, 2018) (citing HALLEX I–2–5–48 (S.S.A.), 1994 WL 637379 (last updated Jun. 16, 2016)).

And here the ALJ properly qualified Plaintiff's ability to do light work with

12

limitations pertaining to Plaintiff, including her use of cane. Regardless, as discussed in further detail below, the ALJ found that Plaintiff was able to perform her past relevant work as Cashier, Tube Room as performed in the DOT, which is sedentary. *See Gieseke v. Colvin*, 770 F.3d 1186 (8th Cir. 2014). Thus, even if the ALJ had limited Plaintiff's RFC to sedentary work (which Plaintiff argues is the correct classification), he still would have found that she was capable of her past relevant work, and thus not disabled under the guidelines. Thus, any error in finding an RFC of light work would be harmless. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [the plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred.").

**(2) Past Relevant Work**

Plaintiff alleges that the ALJ mischaracterized her past relevant work. Specifically, she argues that her past relevant work was a "composite job," thus the ALJ should have determined whether Plaintiff could fulfill the duties of her prior work as it was actually performed, which was medium. Plaintiff then further argues that she cannot perform medium work, only sedentary work and because she has no transferable skills,[4] she meets GRID Rule 201.14 and is disabled.

---

[4] Plaintiff does not provide any additional legal or factual argument to support her contention that she does not have any transferable skills. Her argument focuses on the classification of her past relevant work as a composite job. Regardless, the Court need not determine whether Plaintiff has any transferable skills because the Court finds that the ALJ properly classified her past relevant work as Cashier, Tube Room and properly found that she can perform this work as performed in the national economy (sedentary).

13

At step four of the sequential evaluation process, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f). At this step, Plaintiff still bears the burden to show that she cannot perform her past relevant work. *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019) (citing *Steed v. Astrue*, 524 F.3d 872, 874 n.4 (8th Cir. 2008)). "If [plaintiff] can perform her past relevant work, either as she actually performed it or as the position is generally performed in the national economy, then she is not 'disabled' within the meaning of the act." *Sloan*, 933 F.3d at 950 (citing 20 C.F.R. §§ 404.1520(f), 404.1560(b), 416.960(b)).

"In determining whether the claimant can perform his or her past relevant work, social security regulations provide that the ALJ should normally only consider work that meets the following requirements: (1) the claimant performed the work in the prior 15 years, (2) the work lasted long enough for claimant to learn to do it; and (3) the work was "substantial gainful activity." *Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir. 1998) (citing 20 C.F.R. § 416.965(a)) (additional citations omitted). "Substantial gainful activity" means "work activity that 'involves doing significant physical or mental activities,' even on a part-time basis, and is 'done for pay or profit.'" *Sloan*, 933 F.3d at 951 (citing 20 C.F.R. §§ 404.1560(b)(1), 404.1572, 416.960(b)(1), 416.972).

Here, the ALJ determined that Plaintiff had past relevant work as a Cashier, Tube Room (DOT 211.482-010, SVP 3, sedentary per the DOT, but medium as performed) and as an Assistant Manager, Retail (DOT 185.167-046, SVP 7, light per the DOT, but

14

medium as performed).  Tr. 31.  The ALJ determined, that "[b]ased on the testimony of the vocational expert and the claimant, in conjunction with the exhibits describing her past work . . . the above residual functional capacity would allow performance of her past work as a Cashier, Tube Room as generally performed in the national economy."  *Id.*  Accordingly, the ALJ found that Plaintiff was not disabled.

Plaintiff contends that her past relevant work cannot be properly categorized as Cashier, Tube Room, because her past relevant work was a composite job.  A composite job "involves 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'"  *Sloan*, 933 F.3d at 950 (quoting Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2 (1982).  "Past relevant work may constitute a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant."  *Sloan*, 933 F.3d at 950 (internal quotations and citations omitted).  "If a claimant's past relevant work qualifies as a composite job, then the ALJ should not consider the work 'as generally performed in the national economy,' but must analyze the particular facts of the case to determine whether the claimant can fulfill the duties of the prior work as actually performed."  *Id.*  (citing Program Operations Manual System (POMS) DI 25005.020 and SSR 82-61, at *2).

However, just because a prior job "entails responsibilities beyond those outlined in the DOT does not necessarily make it a composite job."  *Sloan*, 933 F.3d at 950.

> A claimant's prior work "may have involved function demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy."  SSR 82-61, at *2.  An

15

inability to perform these "excessive functional demands" does not render a claimant disabled under the Act.   *Id.*

*Id.*

Plaintiff argues that "Cashier, Tube Room" only describes half of her past relevant work.   The DOT describes "Cashier, Tube Room" as follows:

> Computes and records cash receipts, issues operating funds, receives money and makes change, via pneumatic tube, to assist cashiering personnel in department store: Issues bank (operating funds) to cashiering stations. Receives, via pneumatic tube, carriers containing money and sales slips from sales departments, and makes change, using cash drawer and change dispenser. Records individual payments received, using adding machine. Inserts change into carrier and routes, via tube, for return to specified department. Receives bank and cash receipts from departments and c.o.d. collections from delivery-truck drivers, tallies cash receipts, and verifies cash against accompanying reports. Sorts and counts currency, checks, refunds, and gift certificates. Stacks currency manually and sorts, counts, and wraps coins, using machine. Computes totals, using adding machine, and records on daily report. Corrects faulty entries on individual cash reports received. May perform tasks without use of pneumatic tube.
> GOE: 07.02.02 STRENGTH: S GED: R3 M2 L2 SVP: 3 DLU: 77

DOT Code 211.482-010.

Plaintiff contends that her past relevant work was a composite job because, as she testified, a large part of her job was transporting money and change between the cash room and the vendors in a sports stadium.   In her Work History Report, Plaintiff described her past relevant work as a "Cashroom Supervisor," explaining: "I would count money and take money to stands for change and to collect money as a drop to get extra monies off of the venue floor and put numbers in the computer."   Tr. 238.   She also stated, "I would lift bundles of money and

16

boxes of coins to and from the safe and around the stadium every day that I worked and also any work supplies that would come in." *Id.*  She stated that she would frequently lift 25 pounds, and the heaviest weight she lifted was 50 pounds. *Id.*

At the administrative hearing, when asked to describe her job duties, Plaintiff testified,

> I worked in the cash room.  Our duties were, we went around and picked up money from the different stands, and then we would also give cash if they needed change.  We would also – once we come back we would count the money and put it into the computer . . . And when I couldn't go out anymore. . . I was the one who was sitting back, and everybody else would go out. And they worked with me up until we didn't have the position no more. . . .

Tr. 55-56.

Plaintiff argues that her description of her past relevant work, including the fact that it required the ability to perform medium work,[5] is consistent with DOT Code 211.382-010 Teller, Vault (financial), which reads:

> Fills orders for currency and coins, and counts and records cash deposits in vault of commercial bank: Counts currency, coins, and checks received for deposit in vault from business or branch bank, by hand and using currency-counting machine. Totals currency and checks, using computer or calculator, to verify amount on deposit slip or other form. Records deposit in customer account record. Removes specified amount of currency and coins from vault and places cash in bag for shipment to business or branch bank. Records amount of cash shipped. Counts and records large denomination bills,

---

[5]   Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c).  The ALJ and the VE acknowledged that Plaintiff's past relevant work was medium, as performed, but found that she could perform the position as generally performed in the national economy, which is sedentary.  Tr. 31, 77-79.

17

>mutilated currency, and food stamps, by hand and using currency-counting machine, for shipment to Federal Reserve Bank. Balances transactions for day, using computer or calculator, and records results.
>
>GOE: 07.03.01 STRENGTH: M GED: R4 M3 L3 SVP: 4 DLU: 88

DOT Code 211.382-010.

Plaintiff contends that her core job duties required the ability to frequently walk through the stadium throughout her shift to pick up and deliver money, weighing up to 50 pounds, thus her past relevant work was improperly recognized as the DOT occupation Cashier, Tube Room.

As discussed above, just because a plaintiff's past relevant work entails responsibilities beyond those outlined in the DOT, it is not necessarily deemed a composite job. *See Sloan*, 933 F.3d at 950. If the DOT's description matches Plaintiff's description of her primary responsibilities, it is fair classification, even if Plaintiff performed "functional demands and job duties significantly in excess of those generally required for the job by other employees throughout the national economy." *Id.* (quoting SSR 82-61, at *2).

Here, Plaintiff's primary responsibilities included receiving and counting money, making change, and recording and computing amounts received in the computer, which is consistent with the Cashier, Tube Room description and readily qualifies as substantial gainful activity. Even though, when she was able, Plaintiff would also walk around the stadium to the various vendors and collect money or bring change, these additional activities do not dimmish her duties as a

18

cashier.  Further, Plaintiff testified that when she was injured and in her walking boots in 2019 and "couldn't go out anymore" she sat in the cash room and the other employees would go out and collect the monies.  *See* Tr. 55-56.  Additionally, in 2019, her medical records consistently note that she was on "light duty" at her cashier job.  *See* Tr. 297, 302, 305, 308, 311, 314, 317, 320, 323, 329, 331.  Thus, it appears walking and transporting money was not necessarily a "core" function of her job, and she was able to perform her job without these additional duties.  Regardless, even if she was required to walk and transport money to and from various vendors around the arena, she still performed all the primary functions of a cashier.  Thus, this is not the case of a "composite job" with no counterpart in the DOT.  *See Sloan*, 933 F.3d at 950-51 (finding that plaintiff's past relevant work did not qualify as a composite job because she performed all the duties of a receptionist under the DOT, even though she also had additional responsibilities consistent with those of a store laborer under the DOT).

If a plaintiff can perform her past relevant work, either as she performed it (here, medium), or as the work is performed in the national economy (here, sedentary), then she is not disabled.  *Sloan*, 933 F.3d at 950; *see Jones v. Chater*, 86 F.3d 823, 825-26 (8th Cir. 1996); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996).  Substantial evidence, including the testimony of the VE,[6] Plaintiff's

---

[6]    *See* 20 C.F.R. § 404.1560(b)(2) (stating that a vocational expert may offer relevant evidence concerning the demands of the claimant's past relevant work (as actually

19

descriptions of her past work, and the medical records, support the ALJ's determination that Plaintiff can perform her past relevant work as a cashier as it is generally performed in the national economy (sedentary) and therefore is not disabled.

In sum, upon review, the Court concludes that the ALJ's finding that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as a whole.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 21st day of February, 2024.

---

performed or as generally performed in the national economy) and may testify in response to a hypothetical question about whether a person with the claimant's limitations can meet the demands of claimant's past relevant work.).   At the administrative hearing, the Plaintiff did not disagree with or question the VE's classification of her past relevant work as Cashier, Tube Room, nor did she offer any rebuttal evidence that classified her past relevant work as a composite job or Teller, Vault (financial).  *See* Tr. 80.